IN THE UNITED STATES DISTICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA J. KNIER,<br>    Plaintiff | : | No. 3:16cv457 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Gerald B. Cohn) |
| NANCY BERRYHILL,[1] ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant | :<br>:<br>:<br>: | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**MEMORANDUM**

      Before the court for disposition is Magistrate Judge Gerald B. Cohn's report and recommendation (Doc. 18, hereinafter "R&R"). The R&R proposes denying Plaintiff Debra J. Knier's (hereinafter "plaintiff" or "claimant") appeal of Defendant Social Security Administration's (hereinafter "defendant") decision denying her application for disability insurance benefits (hereinafter "DIB"). Plaintiff filed objections to the R&R, and they are ripe for disposition.

---

[1] When plaintiff filed this action, Carolyn W. Colvin was the Commissioner of Social Security. Accordingly, plaintiff named her as the defendant in her official capacity. Since then, however, Colvin left her position as Commissioner. Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. See OFFICIAL SOCIAL SECURITY WEBSITE, http://blog.ssa.gov/meet-our-new-acting-commissioner/ (last accessed June 28, 2017).

Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.")

**Background**

Plaintiff was born May 13,1963, had earned her GED, was 52 years old, 5' 3," 220 lbs., possessed a driver's license and was able to drive at the time of the oral hearing before the ALJ on September 1, 2015. (Doc. 10, Administrative Record, hereinafter "R." at 31-32.) She was unemployed at that time, but had a significant work history. She worked from 2000 to 2001 "shipping out packages, weighing them, and putting labels on them," lifting "maybe 20 pounds" in the process. (R. at 31.) She remembered working for Schaefer Temporary Services from 2002 to 2003, but did not remember what she did there. (R. at 32-33.) From 2005 to 2009 she worked cutting cable, which involved lifting thirty pounds at most. (R. at 32-33.) From 2009 to 2012 she "finalized and stenciled units," which involved no lifting. (R. at 33.)

Plaintiff stopped working on March 4, 2015 because, she testified, "I had something happen in my life." (R. at 33.)[2] However, she had filed for Social Security DIB on January 19, 2014, claiming to be disabled by "Mode [sic] disorder, pain in lower back depression, migraines, and joint pain." (R. at 153.)[3]

Plaintiff testified that she has lower back pain that "comes and goes" and that "moves around." (R. at 34-35.) She also reported numbness in her arm and

---

[2] Plaintiff initially claimed she stopped working on September 19, 2012. (R. at 153-154).
[3] The court deduces that "mode" should have been transcribed as "mood."

2

leg, and that sometimes she can't move at all. (R. at 34-35.) She described difficulty being around other people; reacting badly to someone touching her, inability to think, and panic, feeling like something is going to happen, and feeling sick. (R. at 34-35.) She confirmed that she takes ten (10) different prescription medications.[4] Plaintiff testified in detail about her depression and anxiety, and their physical effects on her and her life. (R. at 35-39.)

On January 7, 2012, plaintiff filed protectively a Title II application for DIB, alleging a disability onset date of September 19, 2012.[5] (R. at 150-159.) The initial denial took place on March 10, 2015. (R. at 12). She then filed a written request for a hearing on March 26, 2015. (R. at 4-8). The ALJ determined plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The ALJ further determined plaintiff has residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). On October 26, 2015 plaintiff, through her attorney, requested review by the Appeals Council. (R. at 7-8.) On January 27, 2016 the Appeals Council denied the request for review. (R. at 1-6.)

---

[4] Plaintiff testified she takes Lamotrigine, Hydrochlorothaizide, Fluoxetine, Atenolol, Estradiol, Ventolin, Fluticasone, Amitriptyline, Omeprazole, and Black Cohosh. She also takes Centrum. Plaintiff denied having any side effects. (R. at 37-38.)

[5] Plaintiff amended the onset date to March 4, 2015 at the ALJ hearing. (R. at 30-31.)

3

Plaintiff filed the instant appeal on March 15, 2016 (Doc. 1).[6] The appeal was referred to Magistrate Judge Gerald B. Cohn on November 8, 2016. Magistrate Judge Cohn issued his R&R on May 3, 2017 recommending the appeal be denied. (Doc. 18). Plaintiff filed her objections on May 17, 2017 (Doc. 19). Defendant filed her response contesting the objections on May 30, 2017, (Doc. 20), bringing the case to its current posture.

**Jurisdiction**

The court has federal question jurisdiction over this Social Security Administration appeal. See 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); see also 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States

---

[6] See 42 U.S.C. § 405(g).

for the judicial district in which the plaintiff resides, or has his principal place of business . . . .").

**Standard of review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In reviewing a Social Security appeal, this court must determine whether "substantial evidence" supports the ALJ's decision. See, 42 U.S.C. § 405(g); Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). The Third Circuit Court of Appeals has explained that "substantial evidence has been defined as 'more than a mere

scintilla'; it means such relevant evidence as a reasonable mind might accept as adequate.'" Hagans, 694 F.3d at 292 (quoting Plummer, 186 F.3d at 427).

The court should not reverse the Commissioner's findings merely because evidence may exist to support the opposite conclusion. See 42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (stating courts may not weigh the evidence or substitute its own conclusion for those of the fact-finder); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (indicating that when the ALJ's findings of fact are supported by substantial evidence, courts are bound by those findings, even if they would have decided the factual inquiry differently). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo, 383 U.S. at 620.

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981) and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer, 186 F.3d at 429 (quoting Mason v.

Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)). The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008). Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

**Discussion**

To receive disability benefits, the plaintiff must demonstrate an "*inability to engage in any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). An individual is incapable of engaging in "substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates disability insurance claims with a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a)(4). This analysis requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in

substantial gainful activity; (2) has an impairment, or combination of impairments, that is severe; (3) has an impairment or combination of impairments that meets or equals the requirements of a "listed impairment"; (4) has the "residual functional capacity" to return to his or her past work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v). Prior to addressing step four, the ALJ must determine the claimant's residual functional capacity (hereinafter "RFC"). 20 C.F.R. §§ 404.1520(a)(4)(iv). A plaintiff's RFC is "the most [the plaintiff] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

In applying the five-step sequential analysis in the instant case, the ALJ found the following: Step 1- plaintiff meets the insured status requirements of the Social Security Act through December 31, 2017 (R. at 14); Step 2- plaintiff has not engaged in substantial gainful activity since March 4, 2015, the amended onset date, Id.; and Step 3- plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with radiculopathy; a major depressive disorder; a panic disorder; and post-traumatic stress disorder (PTSD). Id. The ALJ found that the record sufficiently established these impairments by diagnosis from an acceptable medical source. Id. They have lasted or are

8

expected to last more than twelve (12) continuous months, cause more than minimal limitations in claimant's functioning, and are therefore severe. (R. at 14-15).

At Step 4 the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404 Subpart P, Appendix 1 (20 C.F.R. §§ 1520(d), 404.1525 and 404.1526)), (R. at 15-16). After considering all the listings and specifically the musculoskeletal listings, the ALJ found that "[d]espite some problems, the [plaintiff] maintains the ability to ambulate effectively and to perform fine and gross movements effectively as the Commissioner's regulations define those terms." (R. at 15).

According to the ALJ, the severity of plaintiff's mental impairments considered by themselves, and in combination, fail to meet or medically equal criteria listings 12.04 and 12.06.[7] Id. Plaintiff similarly failed to satisfy the "paragraph B" criteria, under which mental impairments are disabling if they "result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of

---

[7] Listing 12.04 pertains to depressive, bipolar, and related disorders. Listing 12.06 pertains to anxiety and obsessive compulsive disorders.

decompensation, each of extended duration." Id.[8] Defendant also sent plaintiff to John Tardibuono, Ed.D., who determined she has mild restrictions in daily living activities: "…she allowed her personal hygiene to go unattended a week but she cooked, cleaned, did laundry occasionally, shopped when necessary, could manage money, and drove." Id. Dr. Diorio found the plaintiff's daily living to be functional. Id. Spencer Long, M.D., also examined plaintiff at defendant's behest. Id. Dr. Long determined plaintiff lived with her sister, did some cooking, cleaning, shopping, and dressed and bathed herself. Id. Based upon the foregoing, the ALJ found mild restriction. Id.

Dr. Diorio also examined plaintiff's social functioning. Plaintiff told her she spent most of her time in her room watching television or working on small crafts. She reported no outside social activities. However, her "speech was fluent with expressive and receptive language skills that were minimally adequate…was able to maintain socially appropriate behavior and [her] social skills were functional." (R. at 16). Plaintiff "presented appropriately" to the doctors. Id. Based upon this information, the ALJ found the plaintiff has "no more than moderate difficulties in social functioning." Id.

---

[8] Psychological consultant Melissa Diorio, Psy.D., reviewed the file for the defendant on March 9, 2015, determining as follows: plaintiff's mental impairments were not severe enough to meet or equal a listing, and she demonstrated moderate restriction in activities of daily living, social functioning, and concentration, persistence or pace. Id.

The ALJ found the plaintiff has moderate difficulties in concentrating, persistence or pace based upon the reports of two doctors. (R. at 16). Dr. Tardibuono found her thought processes to be coherent and goal-directed with "only minor evidence of visual hallucinations and some persecutory delusional thoughts." Id. Attention and concentration were intact but plaintiff had mildly impaired recent and remote memory. Id. Meanwhile, Dr. Diorio stated plaintiff's basic memory processes were intact. Id.

At Step 5, and notwithstanding her "minor visual hallucinations and persecutory delusional thoughts," the ALJ determined plaintiff has the residual functional capacity to:

> perform light work…except occasionally climb ramps, stairs, ladders, robes, and scaffolds, balance, stoop, kneel, crouch, and crawl. (R. at 16-19). The ALJ also found the plaintiff is able to understand, remember, and carry out simple instructions and make judgments on simple, work-related decisions. The ALJ found she can respond to usual work situations and to changes in a routine work setting. However, the ALJ found the plaintiff can have no contact with the public, and only occasional contact with coworkers and supervisors. She is able to maintain concentration and attention for two-hour seg-ments over an eight-hour period, and she can complete a normal work week without excessive interruptions from psychologically or physically-based symptoms

(R. at 16-17).

Plaintiff lodges two objections to the Report and Recommendation, which we will examine in turn.[9]

**I. Whether the ALJ's physical RFC assessment was not supported by substantial evidence but based upon his own lay opinion?**

Plaintiff first argues the ALJ erred in assigning "little weight" to consultative examiner Spencer Long, M.D., who examined her at the behest of defendant. Dr. Long penned the sole medical opinion of record regarding plaintiff's physical health, which the ALJ found "inconsistent with [his] examination findings, which were basically within normal limits, and inconsistent with the longitudinal record." (R. at 19).

Dr. Long found the plaintiff should never be exposed to unprotected heights, moving mechanical parts, extreme cold, extreme heat, and vibrations, occasionally be exposed to dust, odors, fumes, and pulmonary irritants, and frequently operate and motor vehicle and be exposed to humidity and wetness. Id. He also found the plaintiff could not perform activities like shopping and could not travel without a companion for assistance. Id.

Dr. Long further opined plaintiff could lift and/or carry 20 (twenty) pounds occasionally and 10 (ten) pounds frequently, sit eight hours, stand one hour, and

---

[9] Defendant's response (Doc. 20) to plaintiff's objections to the R&R (Doc 19) states the objections merely restate arguments made in Plaintiff's opening brief. We agree, noting that our review of the R&R is *de novo*. Defendant relies on the R&R reasoning and her initial brief.

walk one hour in an eight-hour work day due to back pain and leg weakness, frequently reach, handle, finger, and feel, use the right foot frequently and the left foot occasionally, and occasionally climb stairs, ramps, ladders, and scaffolds, balance, and stoop, and never kneel, crouch, and crawl. (R. at 18-19). Dr. Long diagnosed plaintiff with lumbar back pain, left leg weakness and radiculopathy, status post lumbar fusion in 1997, a history of toxic shock syndrome, migraine headaches, and posttraumatic stress disorder. (R. at 383-384).

Social Security regulations compel the ALJ to identify some basis in the record supporting a functional capacity finding.[10] He did not. Notably Dr. Long's was the sole medical doctor in this case rendering an opinion on plaintiff's physical health limitations; no other M.D. examined plaintiff. No treating physician appears in this case. Nothing here fills the void of the evidentiary deficit left in the wake of the ALJ's rejection of the sole physician's opinion evidence. See Swanson v. Colvin, No. 12–CV–645S, WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013) (remanding for failure to develop the record where ALJ "fail[ed] to obtain an RFC assessment from any treating source"); see also House v. Astrue, No. 5:11-CV-915 GLS, WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013) (citing, inter alia, Suide v. Astrue, 371 Fed.Appx. 684, 689–90 (7th Cir. 2010)

---

[10] SSR 96-8p provides that "…the RFC assessment must include a narrative discussion describing how the evidence supports such conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations…).

(holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand)).

In the instant case instead of filling the evidentiary void the ALJ wrongfully substituted his own personal opinion that plaintiff is not disabled:

> The claimant alleged significant limitations (citation omitted). The claimant testified that back pain came and went depending on activity. The claimant testified that she rarely left her home and felt panicked when too many people were around. The claimant testified that when anxious she had trouble breathing, would shake, and needed to be by herself. The claimant testified that she cleaned her room and her sister did everything else. The claimant testified that her back hurt so bad that she could not lift her own weight. *However, the undersigned observed no problems with the claimant entering the room.*

(R. at 17) (emphasis added).

When an ALJ denies benefits, the ALJ must build an "accurate and logical bridge from the evidence to [his or] her conclusion," Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001), and the ALJ may not "play doctor" by using his own lay opinions to fill evidentiary gaps in the record, Slakes v. Barnhart, 331 F.3d 565, 570 (7th Cir. 2003). Plaintiff's brief cites Myles v. Astrue, 583 F.3d 672, 677 (7th Cir. 2009) (*per curiam*) for the proposition that "the ALJ may not make [an] independent medical determination." We agree with plaintiff that is what the ALJ did.

Instead of using resources available to him, the ALJ independently assessed plaintiff's abilities, thereby filling the evidentiary gap with his own

14

opinions unsupported by the medical record. This mistake is reversible error. See M.N. ex rel. Rodriguez v. Colvin, No. 12 C 9367, WL 1612991, at *7 (N.D. Ill. Apr. 22, 2014) ("An ALJ has the duty to ensure that the record is fully and fairly developed, even when a claimant is represented by counsel.") (citing Skinner v. Astrue, 478 F.3d 836, 843 (7th Cir.2007)).

Based upon all the above, we find the ALJ's decision is not supported by substantial evidence. We will thus sustain plaintiff's objection and remand the case for the ALJ to provide proper weight to Dr. Long's opinion.[11]

**II. Whether substantial evidence supports the ALJ's credibility determination.**

Plaintiff next argues that the ALJ erred in finding her testimony not credible. See (R. at 17). The ALJ stated: "After careful consideration of the evidence, the undersigned finds that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."

---

[11] Plaintiff alleges Dr. Long limited her to sedentary work. See (Doc. 12 at 16, citing (R. at 386)). Plaintiff argues that she should be found disabled based upon her age, severe physical and mental impairments on her ability to meet basic demands of sustained competitive work. See generally (Doc. 12). Upon remand, the ALJ should address these issues.

15

The ALJ noted that in considering plaintiff's symptoms he must follow a two-step process. Social Security Regulations require this two-step evaluation of subjective symptoms: (1) a determination as to whether there is objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and (2) an evaluation of the intensity and persistence of the pain or symptoms and the extent to which it affects the individual's ability to work. 20 C.F.R. § 416.929(b).

When a plaintiff's alleged symptoms suggest a greater level of severity of impairment than can be supported by the objective medical evidence alone, the ALJ should consider the following factors to assess the credibility of an individual's statements: (i) the extent of the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3); SSR 96-7.

The ALJ may consider plaintiff's daily activities in assessing credibility, as well. Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or

symptoms is less than fully credible. See Burns v. Barnhart, 312 F.3d 113, 129-30 (3d Cir. 2002) (playing drums and taking care of four dogs undermined plaintiff's complaints of disabling pain).

Instead, the ALJ merely reviewed plaintiff's testimony. She: 1- testified that back pain came and went depending on activity; 2- testified she rarely left her home and felt panicked when too many people were around; 3- testified that she had trouble breathing when anxious; 4- testified she would shake and needed to be by herself; 5- testified she cleaned her room, but her sister did everything else; 6- testified that her back hurt so bad [sic] she could not lift her own weight. (R. at 17).

Notably, this is *after* step one, where the ALJ determined that the underlying medically determinable physical or mental impairments can be shown, by medically acceptable clinical and laboratory diagnostic techniques, that could reasonably be expected to produce plaintiff's pain or other symptoms.

As discussed previously in this memorandum, the ALJ then stated, *"However, the undersigned observed no problems with the claimant entering the hearing room."* Id. (emphasis added).

The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered when the disability determination turns on an assessment of the level of a claimant's pain. 20 C.F.R.

17

§ 404.1529. Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

We find the ALJ's conclusions are not supported by substantial evidence because he did not apply the appropriate factors to determine plaintiff's credibility. This issue should be addressed on remand.

**Conclusion**

After a careful review, the plaintiff's objections to the magistrate judge's report & recommendation (Doc. 18) are **SUSTAINED**, and Magistrate Judge Gerald B. Cohn's report & recommendation is **NOT ADOPTED**.

**Date: July 6, 2017**　　　　　　　　s/James M. Munley
　　　　　　　　　　　　　　　　　**JUDGE JAMES M. MUNLEY**
　　　　　　　　　　　　　　　　　**United States District Court**